NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAE HARRY,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　Defendant. | Civ. No. 18-3232 (SDW)<br><br>**OPINION**<br><br>April 30, 2019 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Mae Harry's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Leonard F. Costa's ("ALJ Costa") denial of her claim for a period of disability, Disability Insurance, and Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction according to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that substantial credible evidence supports ALJ Costa's factual findings and his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

On November 18, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability as of July 15, 2013 due to epilepsy. (Administrative Record [hereinafter Tr.] 97-104.) Plaintiff also filed a Title XVI application for SSI on November 6, 2014. (Tr. 200-09.) Plaintiff's applications were denied initially on January 23, 2015, and again on reconsideration on May 4, 2015. (Tr. 96-131.) On May 18, 2015, Plaintiff requested a hearing; on May 1, 2017, Plaintiff appeared and testified at an administrative hearing before ALJ Costa in Newark, New Jersey. (Tr. 56-82, 147-48.) Vocational Expert Mary Vasishth ("VE Vasishth") also testified. (Tr. 82-94.) Plaintiff was represented by Andrew S. Youngman, a non-attorney representative. (Tr. 11.) In his decision dated June 8, 2017, ALJ Costa concluded that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Act from the alleged onset of disability (i.e., July 15, 2013) through the date of the ALJ's decision. (Tr. 23.) The ALJ also concluded that Plaintiff was not disabled under § 1614(a)(3)(A) of the Act. (*Id.*)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was forty-three years old at the alleged onset of her disability. (Tr. 20.) She has an eleventh-grade education. (Tr. 17, 63, 243.) Her most recent significant employment positions were administrative assistant, secretary, and cashier. (Tr. 17, 21, 66-68.) In those positions, she engaged in mainly clerical work such as making appointments and scheduling meetings. (Tr. 66-68.)

## 2. Medical History

The record demonstrates that medical practitioners examined, consulted, and treated Plaintiff for the physical symptoms associated with her disability claim. The following is a summary of the evidence.

The medical evidence reveals that on November 14, 2013, Plaintiff was brought to JFK Medical Center after having a generalized tonic-clonic seizure,[1] which was witnessed by her boyfriend. (Tr. 17-18.) She reported that she had her first seizure three months prior. (Tr. 316.) On exam, she was awake and alert, oriented to self, place and partially to time, and her speech was fluent. (*Id.*) She was able to walk without assistance and her electroencephalogram ("EEG") was normal. (Tr. 18, 429.) The examining physician felt that Plaintiff's seizures were most likely due to alcohol withdrawal.[2] (Tr. 18, 316.) Plaintiff was started on medication, but signed out of the hospital against medical advice. (Tr. 18, 316-17, 389.)

Approximately seven months later, the Plaintiff was admitted to Robert Wood Johnson University Medical Center for seizure activity. (Tr. 16, 430.) The examining physician felt that Plaintiffs seizures were again a result of alcohol withdrawal.[3] (Tr. 18, 429.) During her hospital stay, Plaintiff's EEG and neurological exam were normal and Plaintiff was again prescribed medication, which she claimed made her feel paranoid. (Tr. 18, 391-92, 429.)

On October 22, 2015, Plaintiff came under the care of Dr. Katherine Inoyama ("Dr. Inoyama"), at the Northeast Regional Epilepsy Group. (Tr. 18, 447-488.) Dr. Inoyama reported that Plaintiff described experiencing two types of seizures: 1) focal seizures, which cause difficulty

---

[1] Tonic-clonic seizures cause whole body convulsions.
[2] During that time, Plaintiff reported a history of alcohol consumption. She reported that she drank 1 ½ pint of vodka and a six pack of beer daily. She also smoked ½ pack of cigarettes daily.
[3] At this time, Plaintiff reported that she was drinking ½ pint of vodka and three beers daily. She also reported that she smoked marijuana and tobacco.

speaking, disorientation, and occasional loss of awareness and which lasted anywhere from two minutes to twenty minutes, and occurred on average, two times per week; and 2) tonic-clonic seizures, which cause sudden loss of awareness, shaking, and "flipping like a fish." (Tr. 447-48.) The episodes allegedly occurred in short clusters of two to three episodes occurring every four to six weeks. (*Id.*) Plaintiff reported being prescribed various medication over the years; however, nothing had completely controlled her seizures. (*Id.*)[4]

Treatment records from UCPC Behavioral Mental Health Center beginning on November 3, 2015, indicate that the claimant was treated for a diagnosis of major depressive disorder. (Tr. 20, 551-54.) Kate Waldron, APN reported that although Plaintiff's mental status exam was within normal limits, she would benefit from anti-depressants. (Tr. 554.)

Between November 4, 2015 and November 11, 2015, Plaintiff was admitted to Overlook Medical Center ("Overlook") for video EEG monitoring. (Tr. 517-50.) During this time, no episodes were captured and Plaintiff's EEG was normal. (Tr. 549.) Dr. Inoyama had Plaintiff tapered off her old medication, Dilantin, and prescribed Lamictal at a higher dose. (Tr. 548.)

In February 2016, Plaintiff underwent a subsequent seventy-two hour ambulatory video-EEG. (Tr. 19, 453.) Similar to her November 2015 evaluation at Overlook, this study did not capture any of seizure episodes. (*Id.*) Plaintiff reported that since being prescribed a higher dose of Lamictal in November 2015, her seizures had changed slightly; she was having fewer generalized shaking episodes, but the number of smaller episodes consisting of disorientation, and occasional loss of awareness was increasing. (*Id.*)

---

[4] At this time, Plaintiff reported that she drank about six beers per week.

On January 31, 2017, a video EEG monitoring study revealed frequent focal seizures captured from the left temporal region, indicative of electrographic evidence for a diagnosis of left temporal lobe epilepsy. (Tr. 442-87.)

   3. **Hearing Testimony**

ALJ Costa conducted a hearing on May 1, 2017, during which Plaintiff and VE Vasishth testified. (Tr. 56-94.) At the hearing, Plaintiff testified that she had a driver's license, but that the Department of Motor Vehicles had revoked it due to her epilepsy. (Tr. 63.) As a result, she traveled to the hearing on public transportation. (*Id.*) Plaintiff indicated that she went to school until the eleventh grade, but never received her GED, and that she used to work as a secretary and cashier, completing primarily administrative work. (Tr. 17, 21, 63, 66-68, 243.) Plaintiff testified that she now subsists on welfare benefits and food stamps, and is unable to work due to seizures and depression. (Tr. 63-65, 75-77.)

Plaintiff stated that her seizures happen without warning, and afterwards she struggles to remember things. (Tr. 69.) Plaintiff testified her first seizure occurred in Fall 2013, and persisted despite medication. (Tr. 72.) Plaintiff also reported a history of depression, beginning at age twenty-one. (Tr. 20, 551-54.) She stated she has problems with her memory and learning new things, and cannot focus. (Tr. 76-78.) She alleged being withdrawn because interacting with others increases her anxiety. (Tr. 76-78.) Plaintiff testified she cries all the time and stays home all day reading and watching television. (Tr. 77-80.)

VE Vasishth testified that according to the Dictionary of Occupational Titles, the job of administrative secretary is highly skilled, sedentary work; the job of cashier is unskilled work, requiring light exertion. (Tr. 86-87.) VE Vasishth stated that an individual with Plaintiff's education, training, and work experience, who could perform a full range of light work, could not

5

perform Plaintiff's past relevant work. (Tr. 87.) The secretarial positions would be skilled work requiring more than routine tasks, and cashiering involves frequent contact with the public. (*Id.*) VE Vaasishth concluded that an individual similar to Plaintiff would be able to perform the requirements of representative occupations such as Mail Clerk, Prime Marker or Housekeeping/Cleaner. (Tr. 88.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Id.* (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks

omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence she accepts and which she rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

### B. The Five-Step Disability Test

42 U.S.C. § 1382 governs a claimant's eligibility for social security benefits. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity due to any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do her previous work but [unable], considering her age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rules ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the "Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, App. 1, 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§

404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can perform past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant can do any other work, considering RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors."

20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

In his decision dated June 8, 2017, ALJ Costa correctly applied the five-step disability test before determining that Plaintiff was not disabled. (Tr. 8-28.) The ALJ's findings are supported by substantial credible evidence, and there is no basis for remand or reversal because he appropriately considered all of Plaintiff's medically supported complaints as evidenced by her consultative visits and medical treatment.

At step one of the five-step test, ALJ Costa determined that Plaintiff had not engaged in substantial gainful activity as of the alleged onset of her disability. (Tr. 14); *see also* 20 C.F.R. §§ 404.1571 *et seq*. At step two, the ALJ found that Plaintiff suffered from epilepsy and depression. (Tr. 14); *see also* 20 C.F.R. § 404.1520(c). The severity of Plaintiff's impairments warranted proceeding to the next step of the sequential evaluation process.

At step three, however, ALJ Costa found that the Plaintiff's impairments do not meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 14.) The ALJ compared Plaintiff's impairments with those listed in §§ 11.02, 11.03 and 12.04.[5] (*Id.*)

In considering § 11.02, the ALJ found that Plaintiff's condition does not meet the requirements regarding convulsive epilepsy because she does not have seizures occurring at least once a month in spite of three months of treatment. (*Id.*) Similarly, in considering § 11.03, ALJ Costa found that Plaintiff's condition does not meet the requirements regarding non-convulsive

---

[5] Section 11.02 addresses convulsive epilepsy, section 11.03 addresses non-convulsive epilepsy, and section 12.04 addresses depression.

epilepsy because she does not have seizures occurring more frequently than once weekly in spite of at least three months of prescribed treatment. (*Id*.)

Likewise, in considering § 12.04, ALJ Costa determined that the severity of Plaintiff's depression was not of sufficient severity based on the listed criteria. 20 C.F.R. 404, Subpart P, Appendix 1. In making this finding, ALJ Costa considered whether the "Paragraph B" criteria are satisfied. (*Id*.) To satisfy the "Paragraph B" criteria, the mental impairment must result in at least one extreme or two marked limitations in a broad area of functioning, which include understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. 20 C.F.R. 404, Subpart P, Appendix 1. A marked limitation means independent, appropriate, effective, and sustained functioning is seriously limited. (*Id*.) An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis. (*Id*.)

In understanding, remembering, or applying information, ALJ Costa determined Plaintiff has moderate limitation. (Tr.14.) The record evidence, including mental status reports, generally showed some impaired short-term memory, but no serious deficits in long-term memory insight, and judgment. (*Id*.) According to treatment records from UCPC Behavioral Healthcare, Plaintiff was able to give a good history of her medical and mental health history to treating and examining practitioners. (*Id*.) Although Plaintiff complained of poor focus, racing thoughts, withdrawal, poor sleep, and poor short-term memory, she generally did not complain of symptoms related to understanding and remembering to treating practitioners. (*Id*.)

In interacting with others, ALJ Costa determined the Plaintiff had moderate limitations. (Tr. 15.) Although Plaintiff testified that she avoids being out in public around people, it was noted Plaintiff generally interacted normally with treating practitioners. (*Id*.) She was not observed to

11

have serious deficiencies in eye contact, speech, or conversations and generally did not complain of serious problems with interpersonal interactions to her treating practitioners. (*Id.*) To the contrary, Plaintiff reported socializing with family and friends both in and outside of the home. (*Id.*)

With regard to concentrating, persisting, or maintaining pace, ALJ Costa found Plaintiff had moderate limitations. (*Id.*) The medical evidence of record shows Plaintiff complained of poor focus after having a seizure, however, she generally did not complain of serious difficulty maintaining concentration, persistence and pace. (*Id.*) Mental status examination results showed Plaintiff had no serious problem with attention and concentration. (*Id.*) Further, Plaintiff reported doing a variety of daily asks that require some concentration, persistence and pace, such as watching television and reading for pleasure. (*Id.*)

As for adapting or managing oneself, ALJ Costa once again found that Plaintiff only had moderate limitations. (*Id.*) The medical evidence of record shows Plaintiff did not usually complain about serious problems with adaptation and managing herself. (*Id.*) Observations of treating practitioners generally showed Plaintiff had no deficiencies in hygiene and wore appropriate attire. (*Id.*) Plaintiff was generally able to handle the mental demands of parenting her daughter, despite some stress, and had no problems with independently making plans and setting goals. (*Id.*) Lastly, ALJ Costa noted that Plaintiff handled her own activities of daily livings without significant assistance form others. (*Id.*)

Because there was no evidence in the record that Plaintiff's mental impairment caused at least two "marked" limitations or one "extreme" limitation, ALJ Costa determined the "Paragraph B" criteria in listing § 12.04 was not satisfied. (*Id.*)

ALJ Costa also determined that the evidence in the record failed to establish that the Plaintiff could satisfy the "Paragraph C" criteria in listing § 12.04. (*Id.*) He noted that the record does not establish that the claimant had only marginal adjustment, or in other words, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the Plaintiff's daily life. (*Id.*) Further, the evidence in the record does not show that simple changes or increased demands have led to a deterioration of the Plaintiff's function or inability to function outside of the home. (*Id.*) Neither the Plaintiff nor the State agency psychological consultant cited specific evidence from the record that fulfills the requirements of Listing § 12.04, "Paragraph C." (*Id.*)

Before undergoing the analysis in step four, ALJ Costa followed the proper two-step process to determine Plaintiff's RFC. (Tr. 16-21.) At the first step, the ALJ found that Plaintiff's medically-determinable impairments could reasonably be expected to cause her alleged symptoms. (Tr. 17.) However, at the second step, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*) After carefully considering the evidence, ALJ Costa found that Plaintiff had the RFC to perform a full range of work at all exertional levels, with a few non-exertional limitations. (Tr. 20.) The ALJ found Plaintiff was restricted from working around heights or dangerous machinery. (Tr. 96-131.) The ALJ found that she was able to understand, remember, and carry out simple instructions with only occasional changes to essential job function, and that she was able to make simple work-related decisions in an environment with occasional interaction with the general public, coworkers, and supervisors.

In reaching this RFC determination, the ALJ found that the objective medical evidence and opinion evidence, in conjunction with Plaintiff's reported daily activities, did not support an

13

alleged inability to perform work. (Tr. 21.) In his decision, the ALJ seemed to be in agreement with Dr. Ahmad Abbassi, a state agency physician, who concluded that although Plaintiff experiences some limitations, she was capable of work at all exertional levels. (Tr. 128-130.) ALJ Costa gave some weight to the opinion of Dr. Inoyama, who found Plaintiff to have greater and more detailed limitation than the ALJ found. (Tr. 20-21, 576-77.) The ALJ gave little weight to the medical opinion of Kate Waldron, APN, who found Plaintiff was markedly or extremely impaired in every mental area related to work. (Tr. 598-99.)

On appeal, Plaintiff argues that ALJ Costa: 1) failed to account for all of her epilepsy-related limitations in the RFC finding; and 2) failed to evaluate the opinions of Plaintiff's treating physicians consistent with the regulations, Agency authority and the law of the Circuit. (Pl.'s Br. 10-20, ECF No. 14.) This Court considers the arguments in turn and finds them each without merit.

Despite Plaintiff's contention that ALJ Costa improperly discounted the opinions of Plaintiff's treating physicians, the record shows that the opinions of Dr. Inoyama and Kate Waldron, APN, were not proportionate to the majority of the objective medical evidence. As the ultimate factfinder, the ALJ has the authority to reject a claimant's testimony as incredible, so long as he can explain his reasoning. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007). As the ALJ explained, Plaintiff's mental status examination was unremarkable except for some short-term memory problems, and her attention and concentration were intact. (Tr. 20, 559.) In March 2016, Plaintiff reported her seizures were under better control, and she agreed to stop drinking alcohol. (Tr. 559.) In this case, the ALJ reasonably concluded that Plaintiff's testimony of the after-effects of seizures, occurring about once every two weeks, was not completely credible, given her mental status examination findings and the improvement she experienced with regular use of medication. (Tr. 19-21.) Further, all of the treating physicians noted Plaintiff's questionable

14

history of seizure disorder may be due to alcoholism. (Tr. 18, 316, 429.)

Plaintiff also argues that the matter must be remanded so that the ALJ may craft a legally sufficient RFC and take vocational testimony regarding the import of additional limitations on the occupational base. (Pl.'s Br. 20.) However, the ALJ is not required to accept the findings of Plaintiff's treating doctors so long as his opinion is consistent with the evidence in the record. *See Coleman v. Comm'r of Soc. Sec.*, 494 F. App'x 252, 254 (3d Cir. 2012) (explaining that ALJs may choose whom to credit so long as they do not "reject evidence for no reason or for the wrong reason" (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)). As ALJ Costa determined, "treatment notes in the record do not sustain the claimant's allegations of disabling impairment." (Tr. 21.) Based on the foregoing, remanding to include Plaintiff's subjective claims that are not supported by the objective medical evidence in the record is neither necessary nor appropriate. Substantial credible evidence exists in the record to support ALJ Costa's findings.

## IV. CONCLUSION

Because this Court finds that ALJ Costa's factual findings were supported by substantial credible evidence in the record and that his legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties